IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

STEPHANIE GOETTL VANDER PAS,

       Plaintiff,

     v.                             Case No. 21C1148

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,

       Defendant.

---

**DEFENDANT'S BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL
DISCOVERY, STAY CASE DEADLINES, AND FOR RULE 37 SANCTIONS**

---

Defendant, by its counsel, hereby submits its brief in support of Defendant's
Motion to Compel Discovery, Stay Case Deadlines, and for Rule 37 Sanctions.

## INTRODUCTION

Plaintiff Stephanie Vander Pas was an undergraduate student at the
University of Wisconsin-Whitewater from the fall of 2009 through the spring of 2013.
She was a part-time graduate student in the MBA program at UWW from the fall
semester of 2015 through the fall semester of 2017. She has not taken any courses
toward earning an MBA since December 2017.

In January 2018, at the very same time that Ms. Vander Pas dropped out of
her MBA program, she began blogging about living with Ehlers-Danlos Syndrome
(EDS). From January 2018 through May 2020, Ms. Vander Pas chronicled the
painful, debilitating progression of this rare, incurable disease. (Vander Pas Dep. Ex.

1002.) On January 23, 2018, Ms. Vander Pas blogged about her decision to drop out of her MBA program, writing that "with all the pain, I didn't think I could handle attending school." (*Id.* at 81.)

Living with EDS didn't just prevent Ms. Vander Pas from attending graduate school, it also made her unable to work full-time. In June 2018, Ms. Vander Pas's doctors "forced her to take medical leave because we can't control my pain." (*Id.* at 44.) By January of 2019, Ms. Vander Pas blogged about her decision to quit a new job after just two months because "my doctors and I already decided I can't physically handle it." (*Id.* at 32.)

During the time that Ms. Vander Pas was blogging about her struggle living with EDS, she was also posting about it on Facebook and other social media. (*Id.* at 49, 70-72, 85.) In February of 2018, Ms. Vander Pas explained that she began blogging in order to more broadly "share some of the raw truth I've otherwise written on my own social media posts." (*Id.* at 70.) Ms. Vander Pas promised that "I'm still going to be the girl with too many pictures on social media posting more words than you want to read." (*Id.*) Indeed, Ms. Vander Pas was the third-place winner of the Ehlers-Danlos Society awareness month Instagram contest on June 19, 2018.[1]

Ms. Vander Pas didn't just write about living with EDS on her blog and social media, she also journaled about it. On January 23, 2018, she extolled the virtues of journaling in a blog post, advising that "journaling is a great way to release how you're feeling. You may not be able to make your pain go away, but releasing how you

---

[1]https://www.ehlers-danlos.com/fragile-but-unbreakable-ehlers-danlos-society-instagram-contest-winners-announced/

feel emotionally about that pain is always a good idea." (*Id.* at 83.) Ms. Vander Pas told her blog readers that: "I regularly journal and doodle my thoughts about what I'm going through." (*Id.*)

Contrary to her blog posts, Ms. Vander Pas now contends that she dropped out of her MBA program in 2018 because she was allegedly groped in 2015 by the husband of the former UWW Chancellor. (Dkt. 1:25, ¶ 170; 1:27, ¶ 178.) Plaintiff's expert states that Ms. Vander Pas left graduate school, took leave from work, and was forced to quit a job because she "was only able to tolerate the job for two months due to her mental health symptoms." (Vander Pas Dep. Ex. 1009.) According to Plaintiff's expert, Ms. Vander Pas has suffered a lifetime loss of earning capacity of $2,463,508 because of this alleged harassment.

Given Ms. Vander Pas's own admissions that she dropped out of graduate school and was unable to work because of her progressive, chronic illness, Defendant sought discovery of evidence such as Plaintiff's medical records, social media posts and messages, journals, and job applications while she was an undergraduate and graduate student at UWW. At first, Plaintiff denied the existence of much of this evidence. Now she just refuses to produce it.

Even worse, Plaintiff admitted to spoliation of evidence during her deposition. All of Ms. Vander Pas's text messages were destroyed by her friend and employer, Mike Kachel. Facebook messages forming the basis of Ms. Vander Pas's damages were deleted by her husband. Ms. Vander Pas did not retain any of her emails from

when she was a student or a Whitewater city council member. Plaintiff has offered no explanation for this failure to place a litigation hold on relevant evidence.

Defendant served its first set of discovery requests on September 26, 2022. Four months and six supplemental discovery productions later, Defendant has not yet received complete responses to its discovery requests because Plaintiff has willfully withheld and destroyed evidence. Plaintiff's bad faith conduct in responding to Defendant's multiple attempts to confer has prejudiced Defendant in preparing for Plaintiff's deposition, disclosing an expert, and filing for summary judgment.

Thus, for the reasons set forth herein, Defendant respectfully requests that this Court dismiss Plaintiff's claims as a sanction pursuant to Rule 37 for Plaintiff's destruction of relevant evidence that she had an obligation to both preserve and produce. In the alternative, Defendant requests that this Court issue an order compelling Plaintiff to produce all relevant evidence on a date to be set by the Court and stay all case deadlines until Plaintiff complies with the Court's order.

## DISCOVERY TIMELINE

- September 26, 2022: Defendant serves Plaintiff with Defendant's first set of discovery, which included requests for admission, interrogatories, and requests for production of documents. (Bachhuber Decl. ¶ 2, Ex. 1035.)

- October 26, 2022: Plaintiff serves her response and objections to Defendant's first set of discovery requests. (Bachhuber Decl. ¶ 3, Vander Pas Dep. Ex. 1006.)

- <u>November 22, 2022</u>: Defendant sends Plaintiff its first conferral letter regarding numerous deficiencies in Plaintiff's responses. (Bachhuber Decl. ¶ 6, Ex. 1037.)

- <u>December 5, 2022</u>: Plaintiff discloses her expert report. (Vander Pas Dep. Ex. 1009.)

- <u>December 8, 2022</u>: Plaintiff's first supplemental discovery production. (Bachhuber Decl. ¶ 8, Ex. 1038.)

- <u>December 9, 2022</u>: Defendant sends Plaintiff its second conferral letter regarding ongoing deficiencies in Plaintiff's discovery responses. (Bachhuber Decl. ¶ 10; Ex. 1039.)

- <u>December 12, 2022</u>: Plaintiff cancels her deposition scheduled for December 16, 2022.

- <u>December 16, 2022</u>: Plaintiff's second supplemental discovery production. (Bachhuber Decl. ¶ 12; Ex. 1040.)

- <u>December 23, 2022</u>: Defendant's third conferral letter regarding ongoing deficiencies in Plaintiff's discovery responses. (Bachhuber Decl. ¶ 15; Ex. 1041)

- <u>December 27, 2022</u>: Plaintiff's third supplemental discovery production. (Bachhuber Decl. ¶ 16, Ex. 1042.)

- <u>December 27, 2022</u>: Plaintiff's counsel emails defense counsel stating that Plaintiff has no further emails, text messages, or social media data to produce, and requests a telephone conference to discuss this discovery dispute. (Bachhuber Decl. ¶ 17, Ex. 1043.)

- December 29, 2022: The parties hold a telephone conference to confer regarding Plaintiff's ongoing non-compliance with discovery. After the telephone conference, Plaintiff's counsel sends an email agreeing to provide authorizations for the release of Plaintiff's medical records and stating that "Plaintiff is not objecting to these requests on relevancy grounds" and "no available information responsive to these requests has been withheld." (Bachhuber Decl. ¶¶ 18-19; Ex. 1044.)

- January 3, 2022: Plaintiff's fourth supplemental discovery production is sent by email at 3:50 p.m. the afternoon before Plaintiff's deposition. (Bachhuber Decl. ¶ 20, Ex. 1045.)

- January 4, 2022: Plaintiff is deposed, revealing that significant relevant evidence has been withheld and destroyed. (Bachhuber Decl. ¶ 22.)

- January 12, 2023: Defendant sends Plaintiff its fourth conferral letter regarding the significant relevant evidence that has been withheld and destroyed. (Bachhuber Decl. ¶ 26; Ex. 1046.)

- January 13, 2023: Defendant sends Plaintiff proposed jury instructions in accordance with this Court's pretrial order procedures for summary judgment. The parties confer the same day. (Bachhuber Decl. ¶ 27.)

- January 16: 30-day deadline to confer regarding an agreed upon statement of facts prior to the dispositive motion deadline. (Dkts. 19:4 & 25.)

- January 20, 2023: Plaintiff's fifth supplemental discovery responses. (Bachhuber Decl. ¶¶ 28-29; Ex. 1047 & 1048.)

- <u>January 26, 2023</u>: Plaintiff's sixth supplemental discovery responses. (Bachhuber Decl. ¶ 30; Ex. 1049.)

- <u>January 30, 2023</u>: Defendant files this motion because Plaintiff's ongoing bad faith conduct in withholding and destroying significant relevant evidence has obstructed Defendant's ability to comply with the Court's deadlines and defend itself against Plaintiff's claims.[2]

- <u>February 3, 2023</u>: Defendant's expert disclosure deadline. (Bachhuber Decl. ¶ 4.)

- <u>February 15, 2023</u>: Dispositive motion deadline. (Dkt. 25.)

## LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The scope of relevancy under Rule 26 is broad. "Pleadings shape the litigation, including the scope and cost of discovery. Based on the claims and defenses raised in the pleadings, the parties can discover information that is relevant, not privileged, and proportional to the needs of the case." *Reed v. Columbia St. Mary's*

---

[2] Defendant made a good faith effort to confer with Plaintiff in an effort to obtain the discovery sought without court action and the parties are unable to reach an accord. (Bachhuber Decl. ¶ 36.)

*Hosp.*, 915 F.3d 473, 479 (7th Cir. 2019) (citing Fed. R. Civ. P. 26.) "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

## ARGUMENT

### I. Plaintiff has engaged in bad faith conduct by refusing to produce relevant evidence.

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed.R.Civ.P. 37(a)(1)-(4). The party objecting to a discovery request bears the burden in showing why the request is improper. *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 450 (N.D.Ill. 2006); *see also Sherman Park Community Ass'n v. Wauwatosa Realty Co.,* 486 F. Supp. 838, 845 (E.D. Wis. 1980). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation omitted).

By willfully withholding relevant evidence until after the Court's deadline to confer regarding summary judgment, Plaintiff has both violated this Court's scheduling order and prejudiced Defendant in its attempts to obtain an expert report and prepare its motion for summary judgment.

8

**A. Plaintiff has willfully obstructed disclosure of her medical records.**

Plaintiff contends that as a result of harassment by Pete Hill, she suffers "severe physical and emotional injuries including headaches, insomnia, low energy, and muscle tension." (Dkt. 1:25, ¶ 170.) Ms. Vander Pas also alleges that she has been diagnosed with post-traumatic stress disorder and major depressive disorder caused by the harassment. (Dkt. 1:25, ¶ 170.) Plaintiff's expert opines that Ms. Vander Pas dropped out of her MBA program, took leave from work, and was forced to quit a job at Oakbrook because she "was only able to tolerate the job for two months due to her mental health symptoms." (Vander Pas Dep. Ex. 1009.)

As set forth above, Plaintiff told an entirely different story on her EDS blog, where she attributed all of these events to her pre-existing medical condition. On her blog, Ms. Vander Pas writes about the date she was diagnosed with EDS: March 14, 2016. (Vander Pas Dep. Ex. 1002 at 57-60.) At her deposition, she amended the diagnosis date to August 8, 2016 because she admitted she lacked any documentation to support her claim of an earlier diagnosis.[3] This diagnosis occurred while she was still an MBA graduate student at UWW, after the alleged incident with Pete Hill in 2015. Plaintiff has still not produced medical records from this time period.

Defendants requested all of Plaintiff's medical records from the date she first received mental health treatment, as well as medical records beginning from when Plaintiff enrolled at UWW as an undergraduate in 2009. (Bachhuber Decl. ¶ 2, Ex.

---

[3] Plaintiff first testified she was diagnosed in 2014 or 2015. (Vander Pas Dep. 247:23–248:2. After she was confronted with her own medical records, Plaintiff agreed the date of diagnosis was August 8, 2016. (*Id.* at 251:1-25.)

1035 at 8-9, 13, Interrogatory No. 8-11, Req. for Prod. No. 9) Plaintiff's first production of medical records on October 26, 2022 consisted of 1,630 pages of medical records and bills. (Bachhuber Decl. ¶ 3.) The earliest date of service reflected in the records produced was October 4, 2018, which is more than two years after Plaintiff writes that she was diagnosed with EDS, and almost three years after she alleges Pete Hill groped her. (*Id.*) Plaintiff provided no medical records for the entire timeframe she was enrolled as an undergraduate or MBA graduate student at UWW. (*Id.*)

On December 5, 2022, Plaintiff served her expert disclosures and the report of her retained psychological/vocational expert witness on Defendant. (Bachhuber Decl. ¶ 7; Vander Pas Depo Ex. 1009.) Plaintiff's expert report was dated August 19, 2022. (*Id.*) Despite Defendant's September 26, 2022 request for production of documents that specifically requested all documents examined by, relied on, or authored by Plaintiff's expert witness, Plaintiff failed to produce any of the materials provided to her retained expert when she produced the report. (*Id.*)

After multiple attempts by Defendant to confer regarding the deficiencies in Plaintiff's discovery responses and production of documents, Plaintiff supplemented her production of documents on December 16, 2022, by producing an additional 93 pages of medical records. (Bachhuber Decl. ¶ 12.) The earliest date of service for the medical records produced with this supplemental production was July 19, 2019. (*Id.*) Defendant sent a third conferral email on December 23, 2022. (Bachhuber Decl. ¶ 15, Ex. 1041.)

On December 27, Plaintiff again supplemented her disclosure of medical records by producing over 300 pages of medical records from the UW Health Pain Clinic dating back to January 2017. (Bachhuber Decl. ¶¶ 16, 25.) This is the earliest date of any medical records produced to Defendants and the only set of medical records produced during the timeframe when Plaintiff was an MBA student at UWW. (*Id.*) Although these records had been in Plaintiff's possession since they were supplied to her expert in August of 2022, they were not timely produced in response to Defendant's September 26, 2022 discovery requests. (*Id.*)

The parties had a telephone conference to discuss discovery disputes on December 29, 2022. (Bachhuber Decl. ¶ 18.) During this conversation, Plaintiff's counsel agreed to produce signed authorizations for the release of Plaintiff's medical records so that Defendant could request records itself in order to avoid further disputes about this issue. (Bachhuber Decl. ¶ 18.) Plaintiff's counsel sent a follow-up email after the telephone conference stating that no responsive information was being withheld, that Plaintiff was not objecting to Defendant's discovery requests on relevance grounds, and agreeing to provide authorizations for the release of Plaintiff's medical records. (Bachhuber Decl. ¶ 19, Ex. 1044.)

Defendant has sent two more conferral letters, on January 12, 2023, and January 26, 2023. (Bachhuber Decl. ¶¶ 23, 31; Ex. 1046 & 1036.) Plaintiff responded not with authorizations, but instead by arguing about whether copies of the records that had been produced to her expert were also produced to Defendant. (Bachhuber Decl. ¶ 31, Ex. 1036.) A month later, Plaintiff has not yet sent Defendant the promised

authorizations despite knowing that Defendant's expert disclosure is due on February 3, 2023.

### B. Plaintiff lied under oath at her deposition in order to obstruct disclosure of her journals.

Defendant's request for production No. 4 states: "Produce copies of all journals, notes, diaries, blogs, or other documents or correspondence you have in your possession or control that have any reference to the allegations in this lawsuit and/or the injuries or damages you claim you have sustained." (Bachhuber Decl. Ex. 1035 at 12, Req. to Prod. 4.) Plaintiff did not produce a single journal entry until her first supplemental discovery production on December 8, 2022. (Bachhuber Decl. ¶ 8.) It was heavily redacted. (*Id.*)

Plaintiff's journal contains an entry on September 30, 2022, about how upset she was regarding Defendant's discovery request for her journal. (Vander Pas Dep. 260:14-261:2, Ex. 1011 at 184.) Yet, the journal was only produced to Defendant after Defendant pointed out that Plaintiff referenced a journal in the other documents she had produced on October 26, 2022. (*See* Bachhuber Decl. Ex. 1037 at 3.)

No journal entry prior to December 16, 2021 has ever been produced. (Bachhuber Decl. ¶ 33.) Under oath at her deposition, Ms. Vander Pas unequivocally and repeatedly denied keeping a journal before December 16, 2021:

Q: Okay. Did you have a journal at that time?

A: No. I did not begin journaling until I entered treatment.

...

Q: Okay. So let's look at Page 3. It's Day 1 of program, and it's a journal entry you wrote on December 16, 2021. Is this the first journal entry you ever wrote from 2015 to December 16, 2021?

A: Yes.

Q: Okay. You never wrote in a journal prior to December 16, 2021?

A: No. It was part of my treatment program at Rogers.

...

A. … As I told you earlier, I did not begin keeping a journal until I entered psychiatric treatment, which is the most difficult decision I've ever made in my life.

(Vander Pas Dep. 35:23–25; 166:5–12; 261:9–12.)

It was only after Ms. Vander Pas was presented with a blog post she wrote in 2018 for EDS Wisconsin[4] in which she extolled the virtues of journaling, that Plaintiff admitted to keeping a prior journal:

Q: -- you state, "Even if you aren't like me and don't want to share with the world, journaling is a great way to release how you're feeling. You may not be able to make your pain go away, but releasing how you feel emotionally about that pain is always a good idea. I regularly journal and doodle my thoughts about what I'm going through. I recommend getting a pretty journal that you enjoy and just writing down what you're thinking somewhere you don't feel any judgment." Did I read that correctly?

A: Yes.

Q: Is that a true statement?

A: It is a true statement relating to pain journaling, yes.

(*Id.* at 271:14–273:8.)

---

[4] Vander Pas. Dep. Exhibit 1002 at 83.

Despite Defendant's conferral letter after Plaintiff's deposition requesting that Plaintiff supplement her discovery responses by producing all journals from 2012 through the present, Plaintiff has not produced any journal entry from prior to December 16, 2021. (Bachhuber Decl. ¶ 33.) Journals that Plaintiff kept during the time period that she alleges to have been suffering mental anguish so severe that she contends it caused her to drop out of her MBA program and suffer PTSD are relevant to the cause of Plaintiff's alleged damages in this case. The only reasonable inference to draw from Plaintiff's refusal to produce her journals from when she was a graduate student at UWW, is that they contain no entries about Pete Hill.

### C. Plaintiff's counsel withheld job applications from Defendant for months after Plaintiff gave them to counsel to produce.

Defendant's Interrogatory No. 16 states: "Identify all employment applications you submitted from September 1, 2017, to present, including the date of your application, the name of the employer, the title of the position, whether you were interviewed for the position and the date of the interview, whether you received an offer of employment, the salary/wage advertised and/or offered, whether it was full-time or part-time, and if you declined the offer of employment state the reason why you declined the offer." (Bachhuber Decl. Ex. 1035 at 10.) Plaintiff responded: "I submitted an application for employment as a property manager with OakBrook and started working there in December 2018. I worked at OakBrook for about one month. I earned an annual salary of $45,000. This was a full-time time position. I also submitted applications for job openings with S.C. Johnson. These applications are

reflected in documents I have produced in discovery." (Vander Pas Dep. Ex. 1006 at 19, Answer No. 16.)

Defendant's Request for Production No. 17 states: Produce copies of all employment applications and documents associated with your employment applications (personal statements, examinations, writing samples, etc.) identified in Interrogatory No. 16." (Bachhuber Decl. Ex. 1035 at 14.) In response, Ms. Vander Pas produced a four-page printout from S.C. Johnson, listing 13 jobs she applied for with only that company. (Bachhuber Decl. ¶ 3.)

When Ms. Vander Pas was asked at her deposition whether she had anything to add to her response to Interrogatory No. 16, she stated: "Yes. I sent my attorney my files from Indeed as well, because there were probably 60, roughly, maybe a little bit less, positions I applied for." (Vander Pas Dep. 238:5–7.) Ms. Vander Pas testified that she had produced these documents to Plaintiff's counsel by late October or early November. (*Id*. at 238:13–239:4.)

As part of Mr. Vander Pas's fifth supplemental discovery responses produced on January 20, 2023 (four days after the January 16, 2023 deadline for the parties to meet and confer regarding an agreed upon statement of facts for summary judgment), Plaintiff produced 2 PDF documents amounting to approximately 650 pages of employment applications and electronically stored information from Indeed. (Bachhuber Decl. ¶ 28.) Plaintiff's Indeed records are incomplete.

For example, the records mention a "property manager" position with "Oakbrook Corporation" dated September 13, 2018 at

SVP5thSupp1stDocProd.000306, but there are no corresponding application materials for this employment position. (*Id.*) Plaintiff testified at her deposition, and included in her response to Defendant's interrogatory number 16, that she was hired as a property manager with Oakbrook in December 2018. (Vander Pas Dep. 237:17–238:2, Ex. 1006 at 19.) Plaintiff has not produced her Oakbrook employment application in response to Defendant's request for production of document number 17. (Bachhuber Decl. ¶ 28.) Plaintiff's Indeed records at SVP5thSupp1stDocProd.000321-337 also show that she was applying for positions in January and February of 2018. (*Id.*) Plaintiff has not produced any employment applications for positions she applied for in January and February of 2018. (*Id.*)

### D. Plaintiff is obstructing discovery of her social media from the relevant time period at issue in this case.

Defendant's Interrogatory No. 20 asked Plaintiff to identify all of her social media accounts. (Vander Pas Dep. Ex. 1006 at 19-20, Interrogatory 20.) Plaintiff identified Facebook and Instagram accounts, in addition to her EDS Blog. (Vander Pas Dep. Ex. 1006 at 20, Answer to Interrogatory 20.) Defendant's Request for Production No. 6-7 sought all relevant posts, photographs, messages, and all electronically stored data for the accounts identified in Interrogatory No. 20. (*Id.* at 26-27, Req. for Prod. & Resp. 6-7.) The first social media document production from Plaintiff, who had previously blogged about being "the girl with too many pictures on social media posting more words than you want to read," contained only 35 pages of Facebook posts and messages. (Bachhuber Decl. ¶ 3.)

16

On December 27, 2022, in response to Defendant's second conferral letter, Plaintiff's counsel emailed defense counsel and reported that Plaintiff had no additional responsive documents to Defendant's requests for production 3, 5, 6, and 7, which requested emails, texts, direct messages, and social media data that reference or relate to her allegations in this lawsuit or her injuries and damages. (Bachhuber Decl. ¶ 17, Ex. 1043.) On December 29, 2022, the parties had a telephone conference regarding this discovery dispute, after which plaintiff's counsel sent a follow-up email stating that no responsive information was being withheld and that Plaintiff was not objecting to Defendant's discovery requests on relevance grounds. (Bachhuber Decl. ¶ 19, Ex. 1044.)

Despite sending two emails telling Defendant that there were no additional responsive documents and that nothing was being withheld, Plaintiff sent her fourth supplemental responses late in the afternoon the day before her deposition. (Bachhuber Decl. ¶ 20, Ex. 1045; Vander Pas Dep. Ex. 1023.) The January 3, 2023 supplemental responses contained a 56-page PDF of relevant Facebook messages about Plaintiff's allegations in this lawsuit, including messages between Plaintiff and other alleged victims of Pete Hill. (*Id.*) During her deposition, Plaintiff testified that she had downloaded all of her Facebook data and provided it to counsel. (Vander Pas Dep 8:21–9:8, 112:24–115:3.) At the time of her deposition, Plaintiff had only produced 91 pages of Facebook posts and messages to Defendant.

Prior to her deposition, Plaintiff had not produced a single Instagram post or message. When Plaintiff was shown a relevant Instagram post at her deposition, she

responded that she was confused about what needed to be produced, that she thought all relevant posts had been produced, and that she didn't think there were any relevant posts to produce. (Vander Pas Dep. at 266:23–268:24.) It is now undisputed that there are relevant Instagram posts that have not been produced to the Defendants. (*Id.* at 268:25–271:5.) When asked to supplement her production with all relevant Instagram posts, Plaintiff agreed. (*Id.* at 271:6–13.)

After Plaintiff's deposition, Defendant sent Plaintiff's counsel a fourth conferral letter on January 12, 2023. (Bachhuber Decl. ¶ 26, Ex. 1046.) On January 20, Plaintiff served supplemental answers to Defendant's first set of interrogatories, supplementing her response to interrogatory number 20 by adding new, additional social media accounts she had not previously disclosed in her discovery responses. (Bachhuber Decl. ¶ 29, Ex. 1048.) Additionally, Plaintiff produced a 185-page PDF document called "Social Media," which contains photographs and other social media posts (presumably) that are undated, unexplained, and contain no associated metadata. Plaintiff also produced six videos without explanation of when or where they were posted or shared on social media or elsewhere. (Bachhuber Decl. ¶ 28, Ex. 1047.)

Then, on January 25, 2023, Plaintiff served her sixth supplemental responses to Defendant's first requests for production of documents, which included a 978-page PDF of Facebook posts and messages that contain no associated metadata. These

posts are heavily redacted without explanation or an accompanying privilege log.[5] Plaintiff also produced PDF, 3 pages in length, of Instagram comments that are undated and out of context. (Bachhuber Decl. ¶ 30, Ex. 1049.) This is the only Instagram data Plaintiff has produced, despite being the third-place winner of the Ehlers-Danlos Society awareness month Instagram contest on June 19, 2018.[6] Plaintiff's posts and messages related to her pre-existing physical and mental health are relevant to the cause of her alleged damages in this case.

Plaintiff has yet to produce any social media posts or messages that predate the fall of 2018. It is well-established that a Plaintiff has no privacy right to refuse to disclose social media or other evidence that reveals the extent to which she may be exaggerating her damages. *See, e.g., Gordon v. T.G.R. Logistics, Inc.,* 321 F.R.D. 401, 404, 97 Fed. R. Serv. 3d 1056 (D. Wyo. 2017) ("Information in social media which reveals that the plaintiff is lying or exaggerating his or her injuries should not be protected from disclosure."); *see also Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (*quoting Davenport v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 555759 at *1 (M.D. Fla. Feb. 21, 2012)) ("Generally, SNS content is neither privileged nor protected by any right of privacy.")

---

[5] Attached as Exhibit 1051 to the Bachhuber Declaration is a small example of the significant improper redactions made to relevant evidence throughout all 978 pages of Facebook posts and messages produced on January 25, 2023, as Plaintiff's sixth supplemental production.

[6] https://www.ehlers-danlos.com/fragile-but-unbreakable-ehlers-danlos-society-instagram-contest-winners-announced/

Plaintiff's social media posts, messages, and electronic Facebook data is relevant to both her allegations and damages. The Facebook messages that were just produced on January 25, 2023, demonstrate that Plaintiff's pre-existing physical disability impacted her ability to work full-time as early as October 2018:



I'm applying other places and do actually have an interview next week but it's not easy to get a job while disabled
Oct 05, 2018 9:30:17am

(Bachhuber Decl. Ex. 1050 at 1.) Defendant is entitled to discovery of Plaintiff's social media during the relevant time period in this lawsuit.

### E. Plaintiff did not retain her emails or make any effort to produce them in response to discovery.

Defendants Request for Production of Document No. 5 asked Plaintiff to produce all relevant email correspondence. (Vander Pas Dep. Ex. 1006 at 26, Req. to Prod. & Resp. 5.) To date, Plaintiff has produced one email. At her deposition, Plaintiff admitted that she had sent and received relevant emails from her city council email address, including to members of the press, but had made no effort to obtain them and produce them to the Defendant. (Vander Pas Dep. 48:21–49:5; 118:12–119:4.) Plaintiff agreed to contact the City and produce her emails. (*Id.* at 260:1–15.) They have not yet been produced.

### II. Plaintiff's claims must be dismissed as a sanction pursuant to Rule 37 for spoliation of evidence.

Rule 37(b)(2)(A) authorizes this Court to issue sanctions for the failure to permit discovery. A district court may dismiss a case as a sanction for discovery abuse if it finds that the party's actions displayed willfulness, bad faith, or fault, and if

dismissal would be a proportionate response to the circumstances. *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir.2009); *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996).

Assessing whether spoliation has occurred requires a two-step analysis. First, a finding of spoliation lies "only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). "A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation." *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519(JBA), 2022 WL 2656787, at *13 (D. Conn. July 8, 2022) (unpublished) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F.Supp.2d 456, 466 (S.D.N.Y. 2010). Second, once a party is under a duty to preserve evidence, they may only be subject to spoliation sanctions when they intentionally destroy that evidence in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). Bad-faith destruction occurs when a party destroys evidence "for the purpose of hiding adverse information." *Id.* at 1019 (quotation omitted); *See Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002) ("[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction."). Defendant, as the movant, bears the burden of establishing both required elements. *Bracey*, 712 F.3d at 1019.

Plaintiff knew that litigation was imminent in the fall of 2018 when she retained counsel during UWW's investigation into her allegations against Pete Hill. (Vander Pas Dep. 136:4–18.) However, Plaintiff admits to deleting text messages

after she retained counsel. (Vander Pas Dep. 9:9–11:3, 156:18–24, 260:14–263:13, 274:23–275:17.) Plaintiff has offered no explanation for the failure to place a litigation hold on this highly relevant evidence. However, Plaintiff's statements both in her journal and at her deposition reveal that she destroyed these messages to conceal adverse information from discovery.

### A. Plaintiff deleted her text messages to hide adverse information.

Defendant's Interrogatory No. 21 asks Plaintiff to identify each text messaging and/or instant messaging service upon which she received or transmitted any information related in any way to her claim, injuries and/or damages. (Vander Pas Dep. Ex. 1006 at 20-21, Interrogatory & Answer 21.) Plaintiff responded that she had used Facebook Messenger and U.S. Cellular. (*Id.*) Specifically, Plaintiff responded that since 2015, D.L.K. Enterprises, Inc. (Plaintiff's employer) is the U.S. Cellular account holder for her phone. (*Id.*)

Defendant's Requests for Production No. 3, 5, and 8 all requested that Plaintiff produce her text message. (Vander Pas Dep. Ex. 1006 at 26-27, Req. to Prod. & Resp. 3, 5, 8.) Plaintiff's responses to all three requests for production stated: "See responsive documents attached hereto," but no text messages were actually produced. (*Id.*) Defendant made multiple attempts to confer with Plaintiff regarding the missing text messages, but Plaintiff never produced a single text message or explained why she would not produce them. (Bachhuber Decl. Ex. 1037 at 3; Ex. 1039 at 1-2; Ex. 1041 at 1; Ex. 1046 at 7.) It was not until her deposition that Plaintiff admitted that all of her text messages had been deleted. (Vander Pas Dep. 9:9–10:19.)

When defense counsel questioned Plaintiff about portions of her journal where Plaintiff had written about how upset she was about having to produce her text messages in discovery, Plaintiff testified that discovery of her journal and text messages felt like a violation of something deeply personal. (Vander Pas Dep. 260:22–261:25.) Plaintiff was very specific about her fears relating to her text messages when she wrote in her journal: "Now Mike, a prominent donor friend, has to worry about his words being read." (*Id.* at 262:3–4.) During her deposition, however, Plaintiff claimed that she was only imaging what it would be like to have to produce all of her text messages and explained that she was "catastrophizing." (*Id.* at 262:1–263:4.)

Defense counsel asked Plaintiff about whether she had ever exchanged any electronic communications with Mike Kachel about the October 2015 incident with Pete Hill. Plaintiff denied that she had, and suggested that her messages with Mike were not related to this lawsuit. (Vander Pas Dep. 60:24–62:2, 262:14–24.) However, in a Facebook message that was just produced on January 26, 2023 (as part of Plaintiff's sixth supplemental discovery production) Ms. Vander Pas references an August 2018 text message she sent to Mike Kachel about her plan to file a complaint against Pete Hill:



Nov 19, 2018 6:50:36pm

Stephanie Ann Goettl-Vander Pas

I texted mike in August that I was going to file a complaint when I came back but that I couldn't go back to school if I did. That's how much I know about what happens to people who speak or there.

Nov 15, 2018 9:55:35pm

(Bachhuber Decl. Ex. 1050 at 2.) Thus, Plaintiff not only deleted text messages she sent about this lawsuit, but she lied about it under oath at her deposition.

Mike Kachel, the person whose text messages Plaintiff was worried about producing in discovery, is also Plaintiff's employer. According to Plaintiff, all of her text messages were routinely destroyed due to an auto-delete setting on her work phone. (Vander Pas Dep. 9:9–10:19, 275:1–17.) Plaintiff admitted that she could easily change the setting on her phone to stop deleting messages, but offered no explanation as to why she did not do this in 2018 when she knew a lawsuit was imminent. (Vander Pas Dep. 275:1–17.) Plaintiff claimed that her employer was currently working on obtaining years of deleted messages, but has provided no additional information as to the status of that effort.

**B. Plaintiff and her husband deleted Facebook messages.**

Plaintiff's expert opines that after Ms. Vander Pas made a formal complaint in September of 2018, she "received multiple online comments including statements that she should kill herself." (Vander Pas Dep. Ex. 1009, King Report at 2.) Vander Pas told King that this was "one of the scariest moments of her life" and that she began to develop suicidal ideation afterwards. (*Id.*) In her Complaint, Vander Pas alleges that she was forced to drop out of the MBA program due to Hill's harassment, and "the public ridicule she endured after reporting Hill's inappropriate conduct." (Dkt. 1:27, ¶ 178.)

Defendants requested that Ms. Vander Pas produce all online comments that she alleges were critical of her decision to report Hill's alleged harassment, but they have never been produced. (Vander Pas Dep. Ex. 1006 at 26-27, Req. to Prod. & Resp. 6-7; Bachhuber Decl. Ex. 1039 at 2; Ex. 1041 at 1; Ex. 1046 at 2-3.) All of the

comments that Plaintiff has produced so far are supportive of Ms. Vander Pas's decision to speak out against Mr. Hill. (*See e.g.,* Vander Pas Dep. 189:20–190:3; Ex. 1007 at 31; Ex. 1023.) At her deposition, Plaintiff testified that these comments have not been produced in discovery because either she or her husband deleted the negative comments from her Facebook feed. (Vander Pas Dep. 112:8–23; 134:17–135:11.)

Under Fed. R. Evid. 1002, the best evidence rule, Plaintiff must produce the original comments if she intends to introduce evidence at summary judgment or trial that she received negative online comments. Plaintiff reports that she and her husband intentionally deleted these comments. She cannot be allowed to testify as to their contents. As a result, Plaintiff's expert must also be foreclosed from opining that Plaintiff suffered any ill effect from "the public ridicule she endured after reporting Hill's inappropriate conduct." (Dkt. 1:27, ¶ 178.)

## <u>CONCLUSION</u>

Thus, for the reasons set forth herein, Defendant respectfully requests that this Court dismiss Plaintiff's claims as a sanction pursuant to Rule 37 for Plaintiff's destruction of relevant evidence that she had an obligation to both preserve and produce. In the alternative, Defendant requests that this Court issue an order compelling Plaintiff to produce all relevant evidence and stay all case deadlines until Plaintiff complies with the Court's order.

Dated: January 30, 2023.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/Katherine C. Polich
KATHERINE C. POLICH
Assistant Attorney General
State Bar #1065796

RACHEL L. BACHHUBER
Assistant Attorney General
State Bar #1052533

JENNIFER R. REMINGTON
Assistant Attorney General
State Bar #1098838

Attorneys for Defendant

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0188 (Bachhuber)
(608) 267-7163 (Polich)
(608) 267-2230 (Remington)
(608) 294-2907 (Fax)
bachhuberrl@doj.state.wi.us
polichkc@doj.state.wi.us
remingtonjr@doj.state.wi.us